# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDWARD ANDERSON,**

    Plaintiff,

    v.                                       Case No. 16-CV-1241

**JON E. LITSCHER,
KIMBERLY RICHARDSON,
ROBERTY HUMPHREYS,
KELLY SALINAS,
RORY THELEN,
MICHAEL HUCK,
TIMOTHY IMMEL,
PAUL SALINAS, and
JODENE PERTTU,**

    Defendants.

## DECISION AND ORDER WITHDRAWING THE REPORT AND RECOMMENDATION (DOCKET # 18), AND SCREENING AND DISMISSING THE AMENDED COMPLAINT (DOCKET #9)

On September 15, 2016, Edward Anderson filed a civil rights complaint under 42 U.S.C. §1983, along with a motion to proceed without prepayment of the filing fee under 28 U.S.C. § 1915. (Docket #1-2). Anderson also filed two motions requesting to use his release account to pay the balance of the filing fee. (Docket # 8, 10).

On May 9, 2017, I issued a decision and order denying both motions to use his release account and screening and dismissing the amended complaint for failure to state a claim. (Docket #14). Anderson then filed a motion to reconsider my decision and order, on May 24, 2017, which I granted in part and denied in part. (Docket #17). Regarding use of his release account, I considered the merits of his argument and denied the motion to

reconsider because he had not shown manifest error of law or fact or newly discovered evidence. (*Id.* at 2). Regarding dismissal of his amended complaint for failure to state a claim, I noted that the defendants had not had an opportunity to consent to magistrate judge jurisdiction, therefore, I vacated the order. (*Id.* at 3); *see also Coleman v. Labor and Industry Review Comm'n of the State of Wis.*, 860 F.3d 461, 475 (7th Cir. 2017). I then converted the screening portion of my decision and order into a Report and Recommendation, and the Clerk of Court assigned it to District Court Judge Pamela Pepper on July 19, 2017. (Docket # 18).

On March 14, 2018, the Wisconsin Department of Justice ("DOJ") signed a memorandum of understanding ("MOU") consenting to magistrate judge jurisdiction for the purpose of screening complaints under 28 U.S.C. § 1915A. The defendants in this case are Department of Corrections ("DOC") employees who are covered under the MOU. Given the defendants' consent to my jurisdiction, I will withdraw my Report and Recommendation and will re-screen the amended complaint.

*Allegations in the Amended Complaint*

On January 28, 2016, Anderson arrived at the Kettle Moraine Correctional Institution ("KMCI") and was placed in the "intake unit." Defendant Michael Huck, along with other correctional officers in the KMCI mail/property room, gave Anderson an orientation on KMCI policies and procedures concerning mail and property. Several days later, defendants Robert Humphreys and Kelly Salinas[1] spoke at an orientation that was mandatory for all newly arriving inmates. Neither orientation described a prison policy

---

[1] I will refer to Kelly Salinas using her full name to distinguish her from another defendant in this case, Paul Salinas. I will also refer to Paul Salinas using his full name.

which allowed prison staff to take and destroy mail/property without an inmate's express consent.

On March 28, 2016, Anderson received a "Notice of Non-delivery of Mail" which explained that defendant Timothy Immel destroyed a letter sent to Anderson because it smelled of perfume. Anderson wrote to Huck and defendant Rory Thelen about his right to appeal the decision through the Inmate Complaint Review System ("ICRS"). Anderson received no response.

Several days later, Anderson submitted an inmate complaint (KMCI 2016-7133) regarding the denial of his mail. Kelly Salinas recommended dismissing the complaint because "[n]o violations have been made by staff on this matter." Docket No. 9, ¶ 34. Based on Kelly Salinas' recommendation, Humphreys dismissed Anderson's complaint. Anderson appealed, and defendant Kimberly Richardson recommended dismissing the appeal because "the institution's decision reasonably and appropriately addressed the issue raised by [Anderson]." *Id.*, ¶ 38. Defendant Jon Litscher accepted this recommendation and dismissed Anderson's appeal. Anderson states that none of the individuals who reviewed his inmate complaint actually investigated the matter before dismissing the complaint.

On April 3, 2016, prison staff transferred Anderson from the "intake unit" to "general population." Anderson requested to pick up his typewriter from the mail/property room because inmates in general population could have their typewriters. Immel gave Anderson his typewriter but kept the adapter because adaptors were not allowed in the "intake unit." Anderson reminded Immel that he was no longer in the "intake unit" but Immel still refused to give Anderson the adapter.

About two weeks later, Anderson sent a request to Thelen asking for his adapter. CO II Dreikosen (not a defendant) wrote back confirming that Anderson could have two adapters in general population. Anderson then sent a request to Huck asking to pick up his adapter from the mail/property room. Dreikosen responded again indicating that Anderson would be called to the mail/property room to get the adapter when his unit was called.

On April 28, 2016, Anderson filed an inmate complaint (KMCI 2016-9364) against Immel, Huck, and Thelen for refusing to give him his adapter. He attached the request for the adapter that he had sent to Thelen, along with Dreikosen's responses that he could have two adaptors. Kelly Salinas rejected the complaint, and Humphreys affirmed.

Huck finally called Anderson to the mail/property room on May 2, 2016. Huck told Anderson that he could either mail out the adapter or destroy it "for failure to file a complaint." *Id.*, ¶ 61. Anderson told Huck that he had written to Thelen, filed an inmate complaint, and had two correspondences from Dreikosen stating that could have the adapter. Huck threw out the adapter anyway.

Several weeks after that, Anderson submitted a new complaint (KMCI 2016-9758) regarding destruction of his adapter. Anderson again attached Dreikosen's responses as evidence that he could have the adaptors. Defendant Jodene Perttu recommended dismissing Anderson's inmate complaint based on "her contact with Defendant K. Salinas and on form DOC-237 from the mail/property room;" Humphreys dismissed the complaint. Anderson appealed, and Corrections Complaint Examiner Welcome Rose (not a defendant) concluded that KMCI staff failed to follow proper procedure. Rose recommended that Perttu and Kelly Salinas work to reimburse Anderson for the adapter.

4

On May 24, 2016, Anderson submitted an inmate complaint (KMCI 2016-10846) against Kelly Salinas for failing to consider relevant evidence in his two inmate complaints regarding the adapter. Perttu rejected the complaint, and Humphreys affirmed. Anderson again alleges that no one actually investigated his inmate complaint before rejecting it.

Sgt. Paltz (not a defendant) gave Anderson a conduct report (CR 2830044) for unauthorized transfer of property and lying on June 22, 2016. About a week later, CO II Gantner (not a defendant) also gave Anderson a conduct report (CR 2830291) for unauthorized transfer of property, theft, and damage/altering property. Anderson received a due process hearing for the second conduct report on July 15, 2016. Defendant Paul Salinas was one of two members on the due process hearing committee. Anderson was found guilty of unauthorized transfer of property and damage/altering property. Thelen then fired Anderson from his job as a Tailor in Maintenance (Laundry). Anderson appealed the decision, and Humphreys affirmed.

In October and November 2016, Anderson wrote to Sgt. Gens (not a defendant), Paul Salinas, Deputy Warden S. Novak (not a defendant), and Humphreys asking for a new pair of state boots. Neither Sgt. Gens nor Paul Salinas (both of whom supervised the department responsible for providing new boots) responded. Anderson also told Novak and Humphreys that he felt like prison staff were retaliating against him for his numerous inmate complaints.

On November 9, 2016, Anderson filed more two inmate complaints: (1) that Paul Salinas and Sgt. Gens refused to respond to his requests for new boots (KMCI 2016-24579); and (2) that that Kelly Salinas was using Paul Salinas and other KMCI staff members to retaliate against him (KMCI 2016-24587). Kelly Salinas recommended dismissing the first

inmate complaint (KMCI 2016-24579) because Anderson "never contacted Sgt. Gens and Defendant P. Salinas through form DOC-761." *Id.*, ¶ 116. Perttu rejected Anderson's second inmate complaint (KMCI 2016-24587) because Anderson did not provide "specific enough information to conduct an investigation." *Id.*, ¶ 114.

On November 11, 2016, Anderson filed an updated inmate complaint (KMCI 2016-24822) "providing specific information" on Kelly Selinas' retaliation. *Id.*, ¶ 115. Anderson then filed an inmate complaint against Perttu, on November 17, 2017, alleging that Perttu used her position as ICE to assist Kelly Salinas in her retaliation against Anderson (KMCI 2016-25255). Inmate Complaint Examiner H. Paulsen (who was not named as a defendant) rejected both inmate complaints regarding Kelly Salinas' retaliation.

*Analysis*

1. First Amendment Interference with Mail: Mail that Smelled of Perfume

"The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)). Prison regulations or practices affecting a prisoner's receipt of non-legal mail must be "reasonably related to legitimate penological interests." *Id.* A single, isolated incident where prisoner's personal mail was confiscated and destroyed does not violate the First Amendment. *See Rowe v. Shake*, 196 F.3d 778 (7th Cir. 1999); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); *see also Nixon v. Secretary Pennsylvania Dept. of Corrections*, 501 Fed.Appx. 176, 178 (3d Cir. 2012).

Anderson states that Immel, Huck, and Thelen acted intentionally when they destroyed a card that smelled like perfume. Anderson complains of only one piece of mail that was destroyed, presumably because it violated a prohibition on perfumed mail. A single, isolated incident where prisoner's personal mail was confiscated and destroyed does not violate the constitution

Anderson states that Kelly Salinas, Humphreys, Richardson, Litscher, and Perttu (all of whom handled Anderson's inmate complaints/appeals on the denial of his mail) failed to prevent Immel, Huck, and Thelen from violating his rights. However, "the alleged mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citations omitted). Defendants Kelly Salinas, Humphreys, Richardson, Litscher, and Perttu did not do anything with Anderson's mail apart from reviewing his inmate complaints on the matter. They also did not have an opportunity to stop the destruction of the mail given that they only heard about it after the fact, when he filed a grievances. Thus, Anderson fails to state a claim for interference with his mail.

To the extent Anderson mentions his ability to correspond with his loved ones, the Constitution only protects "certain kinds of highly personal relationships." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 619-20 (1984)). Outside the prison context, there is "a right to maintain certain familial relationships, including association among members of an immediate family …." *Overton*, 539 U.S. at 131. However, "[t]he very object of imprisonment is confinement," "[a]n inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration." *Id.* (citations omitted). In *Overton*,

the Supreme Court upheld a regulation that limited visitation by minors to children, stepchildren, grandchildren, or siblings of the inmate.

There is no indication that the destruction of one perfumed letter had anything to do with interference with Anderson's close familial relationships. Anderson does not describe who the letter was from or his relationship with that person. His allegations do not state a claim for interference with familial relationships.

   *2.*     Fourteenth Amendment Due Process: The Typewriter Adapter

The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Germano v. Winnebago County*, 403 F.3d 926, — (7th Cir. 2005) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). When property is taken by government action, due process generally requires that the government provide an "opportunity to present reasons, either in person or in writing, why proposed action should not be taken . . . ." *Germano*, 403 F.3d at — (quoting *Cleveland*, 470 U.S. at 546). "When a state official's conduct is random and unauthorized, due process requires only that an adequate post-deprivation remedy exists." *Johnson v. Wallich*, 579 Fed.Appx. 601, 602 (7th Cir. 2014) (citations omitted).  "By statute, Wisconsin affords procedures that can address random, unauthorized deprivations of property by state officers and officials. It provides tort remedies for those whose property has been converted or damaged by another." *Id.* (citations omitted).

Anderson states that Huck threw out his adapter without his consent. Because Huck acted inconsistent with the DOC policy, his conduct was "random and unauthorized."

8

Anderson's remedy, therefore, lies in state court. He cannot procced with a Fourteenth Amendment claim in federal court.

    *3.*    First Amendment Retaliation: Anderson's Numerous Inmate Complaints

To state a claim for retaliation, Anderson must allege that he engaged in a protected activity, suffered a deprivation likely to prevent future protected activities, and that there was a causal connection between the two. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In the prison context, the First Amendment right to petition the government for redress of grievances includes the right to pursue "administrative remedies that must be exhausted before a prisoner can seek relief in court." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Prisoners are entitled to utilize available grievance procedures without the threat of recrimination. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

Anderson makes several statements regarding "retaliation:" (1) that Kelly Salinas, Paul Salinas, Thelen, and Perttu "retaliated" against him and harassed him because he filed inmate complaints against them; and (2) that Humphreys, Richardson, and Litscher failed to take action to address staff misconduct from the retaliation.

Anderson states that he was engaged in a protected activity when he filed his numerous inmate complaints. However, he does not provide details on what actions he believed were "retaliatory." Thus, I will consider what each defendant did after Anderson filed his inmate complaints against them.

Anderson filed his inmate complaint against Kelly Salinas on May 24, 2016. The only action that Kelly Salinas took with regard to Anderson after this date was to reject his complaint that Paul Salina and Sgt. Gens denied him new boots. Kelly Salinas took this

9

action almost six months after Anderson filed the inmate complaint against her, and she did so as a part of her job duties. Anderson appears to imply that Kelly Salinas and Paul Salinas are related but he does not describe their relationship or explicitly make that connection. These facts do not plausibly suggest retaliation.

Anderson filed his complaint against Paul Salinas on November 9, 2016. Based on Anderson's own allegations, Paul Salinas took no actions with regard to Anderson after that date. Although Paul Salinas was a member of the due process hearing committee for Anderson's conduct report on the unauthorized transfer of property and damage/altering property, that was on July 15, 2016, before Anderson filed an inmate complaint against him. These facts do not plausibly suggest retaliation.

Anderson filed his inmate complaint against Thelen on April 28, 2016. Thelen later fired Anderson from his prison job, on July 15, 2016, after a due process hearing which found Anderson guilty of unauthorized transfer of property and damage/altering property. This too happened almost three months after Anderson filed his inmate complaint against Thelen. These facts do not plausibly suggest retaliation.

Finally, Anderson filed his inmate complaint against Perttu on November 17, 2016. Based on Anderson's own allegations, Perttu took no actions with regard to Anderson after that date. Perttu did reject Anderson's complaint against Kelly Salinas on November 9, 2017, but this too was before he filed an inmate complaint against Perttu. These facts do not plausibly suggest retaliation.

Even under a liberal construction of the *pro se* complaint, Anderson does not state a plausible claim for retaliation against Kelly Salinas, Paul Salinas, Thelen, and Perttu. *See Twombly*, 550 U.S. at 555. Accordingly, Anderson cannot procced with a claim that

10

Humphreys, Richardson, and Litscher failed to intervene to stop the retaliation. Therefore, I will dismiss this complaint for failure to state a claim upon which relief can be granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Report and Recommendation (Docket # 18) is **WITHDRAWN**.

**IT IS ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim. The Clerk of Court will enter judgment accordingly.

**IT IS ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 27th day of March, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge